and I represent the appellant Joanna Smith. In this matter, Joanna Smith, first the Honorable Frank Kendall, Secretary of the Air Force. All right, give us your theater voice in that mic so we can pick you up. You don't have to do anything to it, but just keep your voice up and we'll be able to hear. Yes, sir. Yes, Your Honor. Appellant brings this appeal today after the district court judge entered an order granting the appellee's 12B6 motion to dismiss, dismissing all of the appellee's claims with prejudice. The appellant filed this suit asserting multiple claims under Title VII of gender discrimination, race discrimination. She also asserted disability discrimination under Rehabilitation Act and also retaliation under Title VII. The appellee filed their motion to dismiss, and then subsequently after that, the court granted that, and then thereafter, the appellant filed the motion for reconsideration, which the district court subsequently denied. The district court ultimately found in their memorandum opinion that appellant's pleadings were deficient in two ways. The first way was that the appellant had not submitted enough facts that demonstrated she was terminated because of her protected class. And the second issue, the second issue was that the appellant... Slow down a bit. You're good on your time. Slow down. You're talking fast, but just speak like you hear, and then just keep your voice up because it's fading a little bit. It's harder to hear you, but just slow down. You're good, but just talk into it, and we'll be able to hear you. Yes, Your Honor. Appellant, the second issue was that appellant had not submitted enough facts to permit a reasonable inference that defendant knew of her protected activity. And so, in this appeal, the appellant has started three issues that there was before this court. The first issue is whether the district court erred in dismissing the appellant's discrimination claims when it found that she makes no allegation that the decision-maker made the adverse action based on her protected class, which is gender, race, or disability, given that the factual allegations in the decision-maker demonstrate that the decision-maker had a discriminatory animus, and based on a reasonable inference, it can be shown that the facts plead a disparate treatment between her similarly situated peers. The second issue that's before this court is whether the district court erred in dismissing the appellant's retaliation claim when it found the appellant failed to provide factual allegations that it permitted a reasonable inference that defendant knew of her protected activity, given that there was a one-month temporal proximity between the appellant's last protected activity and her termination, and based on her history of EEO complaints, it can be reasonably inferred that the facts or evidence of a defendant's knowledge of the protected activity would be uncovered through discovery. The third issue is whether— Let's stay with your first issue first. You got dismissed on the pleading, so help us. We've read the record, and we've read the briefs. We know how it's teed up. We know the issues—I mean, what's framed there, so help us to know, from your standpoint, how the district court erred by dismissing your case at that early stage, so help us to understand how the pleading overcame the plausibility hurdle. Yes, Your Honor, and so as our status, we stated in our brief that the district court judge made the analysis based on improper standards, on summary judgment standards using summary judgment case law in this case, in this applicability of the 12B6, and so with regards to the discrimination piece, the Supreme Court of the United States has stated that there's ultimately, at the pleading stage, there's two elements that need to be shown to show—excuse me—to show a prima facie case. All right, back up. Don't tell me what the law is. Tell me what the facts are that are So, you know, within Twombly, within those, just articulate for us what you pled in the complaint that gets you there. Just help us understand what you pled. So, in regards to discrimination, is that correct? Right. In regards to discrimination, we have pled that she was in a protected class. She was in a protected class based on her race, her gender, and her disability. The second element is to show that she was qualified for a position, which we have shown, you know, through the facts that inference can be made based on her employment. The third element would be showing that she was terminated because of her protected class. Now, a way that you can show that, you know, in our pleadings, it can be shown that she was terminated based on her protected class can be shown through the individuals that she has identified as her peers within our third amended complaint. Those individuals' names, I have it here. Look to me like, correct me if I'm wrong, the protected status allegations that were the most apparent to me were those relating to gender. Would you agree with that? Yes, Your Honor. That's the main, yes, Your Honor. Because the age and the disability, there isn't much. There isn't much there. So, focusing on that, just your best case, what's the most significant and most temporal allegation? Because I was thinking that the one that jumps off the page is Mr. Alvera soliciting sex from her in May of 2019. Is that the most temporally close to her termination? No, there was also, so she filed a protected complaint in January of 2019. I agree, but that's more to the retaliation claim, right? Yes, but that complaint consisted of her complaining about discriminatory comments that were made in December of 2020. So, that would be the closest temporal time frame. So, the retaliation or the protected activity covered what the discrimination was. I mean, bootstrapping sort of has a negative connotation. I don't intend it. But would you agree that the May 2019 Alvera, that would be too old? No, I would not agree to that. Just based on it being shown that this is a continuing thing, that there was no intervention between this action that started happening in February all the way up to her termination the following February. So, that would show just, I guess, sufficient facts to show. What did she, in the discrimination claim, what event did she actually plead after the May 2019 one in that claim? Yes. Maybe just give me the paragraph in the complaint. Yes. So, she stated, I don't have the exact paragraph number in the complaint, but it's November 2020. In the complaint, it's November 2020. She stated she was forced to make a military move to a different position that was authorized by her supervisor. That's arguably an adverse action, but you've focused on the termination. I'm asking an example of gender discrimination after May of 2019. And I think based on the complaint, the only gender discrimination would be the complaint that she made for Salas making the discriminatory comments in a report, and that would be in December. But other than that, it would go back to the May. Well, that's fine. And maybe then shifting to the retaliatory, your claim there? Yes. Because the district court said no plausible inference that the decision maker who fired her would have known about the EEO complaint. That goes into the retaliation. Yes. That's what the district court said. What's the core of your argument about that? Yes. The core of my argument is that there's a lot of cases here in the Fifth Circuit that have stated that in the pleading stage, the temporal proxitomy can be shown to show a prima facie case. And then also there's multiple cases that's in the Southern District of Texas. Also, that's here in the Fifth Circuit, Outley versus Luke Associates, which have shown a two-month difference between the protected activity and termination is close enough even in the more onerous summary judgment evidence standard. I'm interested in the complaint because we had 12 v. 6. And the last complaint is the third amended complaint. So that means somebody's made three swipes trying to get here, right? Yes, Your Honor. And so I know your overarching argument is that you think the district court applied a summary judgment standard to the complaint, got that part. But looking at Judge Pulliam's ruling on it, apparently you or other counsel wanted to amend a fourth time. And the judge denied that and he said, well, there was no basis for that. And then he says, when the attorneys conferred about the deficiencies, the less and the most of the plaintiff was either unable or unwilling to cure the pleading deficiencies, the court has found she's played her best case. Then he goes on to say something about there were two other lawyers who were on the case originally. You filed the motion for reconsideration. And then he says, the plaintiff makes new and perhaps improved arguments against the motion to dismiss. He didn't consider those, apparently under Rule 59. So my question is, what were the new or the that you made, not arguments, but pleading particulars in that context that would have either allowed a Fourth Amendment complaint or is that an acknowledgment that the Third Amendment complaint, which is before us, is deficient? Do you understand my question? Yes, I understand your question. And so from my understanding is that the new arguments that were made relates to one, that we acclaimed that discovery was needed. And he stated that there was no indication that discovery was needed. However, we did point out that discovery would be helpful in showing the requisite knowledge and accurate knowledge of the defendant. And so that was one of the main arguments at the reconsideration phase is that, hey, you're citing cases at Alvarado, Russell, and that shows that, you know, that there was a requirement that retaliation to show that you had the requisite knowledge that the person filed the complaint and you terminate him based on your knowledge of that person filed the complaint. Are you saying the newer allegation would have been with respect to the retaliation? Yes. Okay, that clarifies because, all right, as to the retaliation, all right, not to the other person. Okay, coming back to square one, I mean, it's a 12 v. 6 and we're on the third complaint. Yes. You know, or nearly the judge reported out on the first complaint, we say, go back, let him amend. So this is the third amendment point which reports to say, he says you pled the best case. So coming back to what Jackson was asking, just help us understand where the reversible error here is within the plausibility pleading standards. You follow me? Yes, sir, I follow you. And you're referring to the discrimination? Yeah, first the discrimination. In the discrimination, the error is that the court heightened the standard of the pleadings. And so the Supreme Court stated there was two requirements to show at the pleading stage. And one of them was showing that the discrimination or the adverse action was based on the protected class. And so here we've demonstrated that there were comparators that she's identified, Roa Vera, those other two individuals she identified as her peers, and Roa Vera, Mr. Edward Almaguer, and Mr. Carlos Ramirez. And so those are all male individuals she's identified in her amended complaint as being her peers. And so this court in Cicely, 2019 case, stated that the court errs by requiring a plaintiff to plead something more than the ultimate elements of a claim. And a court thus improperly heightens the pleading standard by subjecting a plaintiff's allegation to a rigorous factual or evidentiary analysis under the McDonnell-Douglas framework in response to a motion to dismiss. And so in that case, this court disagreed with the lower court's finding that the district court required the plaintiff in that Cicely's case to plead with adequate specificity as to the similarly situated situation. And so similarly here, the appellant has alleged that these similarly situated peers male that I've just named were treated more favorably or allowed to engage in this type of conduct and unwelcome sexual advances without any repercussions. There was no intervention. And then there's also, she's argued that these her complaints were also still pending while she was at the time of her termination. And so with that, it demonstrates a disparate treatment, it demonstrates the individuals outside her protected class that she's identified as males were treated more favorably. But you would say it's certainly as to the gender discrimination that you've pled enough to get you to the next step. Yes, your honor. I would say to the gender discrimination that specifically, yes. And I know there's other claims that we've asserted that we've kind of filed through what's been filed with the EEOC. But specifically, we've identified those individuals and their males. And we might not know at this time what their race is or in comparison to hers or their exact age. But there is an inference that these individuals were allowed to engage in this conduct and were not facing any type of termination. So in this case situation, the appellant was terminated and she wasn't given any reason as to what her termination reason was for. And so that can be shown that individuals who engage in maybe violations of the policies in regards to discrimination and harassment amongst other employees were allowed to continue to do that. And since we're treated more favorably and so reasonable inferences can be drawn, that males were treated more favorably given that she was terminated for whatever reason that they've asserted that she was terminated for in comparison to her male counterparts who were not terminated or not disciplined for the similar action. All right. I'm going to give you two minutes to address your retaliation claim. Yes. And the retaliation is just pretty straightforward as well. Our argument is that district court used the specific adequate standard, higher pleading standard to require the appellant to plead the knowledge of the decision maker. Now that creates difficulties in a lot of these cases trying to assert because in some situations the appellant may not know who the decision maker was or the appellant may not know what the reason was for her termination. So in this situation, what we've shown is that one month temporal proximity and time is reasonable enough to infer that the individuals who made the decision were aware of the complaints that were made. And not only was they aware of the complaint, the most latest complaint in Jane, where they were also aware of the protected activity, the multiple complaints that were made prior. And so she directly complained to her supervisor. And so if the supervisor, Mr. We believe that discovery will uncover the records of knowledge that we would need and that this standard or this pleading standard as relates to pleading the knowledge of the decision maker is something that should be left for a summary judgment after discovery is completed and after we are able to depose the decision makers to ascertain whether they had knowledge or not as to the EEOC process because that's a simple question. And at the pleading stage, it's literally taken into the appellant's favor. And then reasonable inference can be drawn that if an employee files a complaint against a supervisor, then during that investigation, the supervisor will be well aware of what is being said and also the time frame, the one month. And so with that, I'll reserve the rest of my time. All right. Thank you, sir. You've reserved. All right, Mr. Good. May it please the court. My name is Assistant U.S. Attorney David Good and I represent the defendant, Appellee Frank Kendall, the Secretary of the Air Force. This case presents a straightforward application of the Rule 12b-6 Pleading Standard to disparate impact, discrimination, and retaliation claims under Title VII. A plaintiff is not entitled to discovery based on conclusory assertions and unsubstantiated hopes that discovery will later vindicate her claims. The district court correctly applies the rule to the plaintiff. The plaintiff is standard to the claims in the complaint. But you seem to acknowledge, or whoever was in the case, that, you know, discovery wasn't happening and they sort of moved away from that. But it's a third amended complaint. I mean, how much detail does he have to plead without any discovery to get over 12b-6? It's supposed to be plausibility, not proving your case. Yes, Your Honor. And so this is the third amended complaint and there are still lacking basic details in the allegations. For example, we don't even know what position the plaintiff had. It's not alleged in the complaint what her job duties, her job responsibilities are. There are no allegations of causal connection, as was discussed earlier, between any discriminatory comment and her termination that came nearly two years later. And ultimately, with the comparators, although the district court didn't dismiss on that basis, she hasn't identified any similarly situated employees or what their job duties were, although she named several employees and, in some instances, the positions in the complaint. She doesn't identify what their races are, what their ages are, what their gender is, although that can perhaps be inferred by the name, or any disability status in the complaint. So this court should affirm, because the district court applied the proper standard and found that the plaintiff had insufficiently alleged facts regarding the two ultimate elements for her discrimination claim and the ultimate elements for her retaliation claim. I'm looking at the complaint. I mean, she's got a whole bunch of in here. I mean, the complaint is, you know, she's got dates and names in the complaint, you know, going backwards in people's names and subparagraphs and so forth. I mean, people file claims with a whole lot less than this. Count one is gender discrimination. She was a member of a protected class, et cetera, et cetera. I mean, I get it. It might have to be more perfect, but Iqbal says plausibility. I mean, it's at the pleading stage, you know, and at 12b-6, I'm just trying to understand what's so woefully short about this complaint to get poured out at the 12b-6. I mean, she might lose the summary judgment, you know, to your point, discovery, et cetera. Is it your position she'd have to name all the names, who was where, what room they were in, and so on and so forth? I'm not trying to be facetious, but I'm just trying to get to it. Iqbal says plausibility. So would she have to, without knowing, put all that, or are you saying because she didn't spell out in here, you know, in detail her job position and that kind of detail, that that's what our cases require? Well, based on the complaint, it seems that some of those individuals appear to be supervisors or second-line supervisors, which wouldn't necessarily be a similarly situated employee, I would assume. But we start with her discrimination claims specifically in the basis for the district court's dismissal. The plaintiff brought four, or claimed four, protected status. One based on disability. There's no disability that's actually claimed in the complaint. There's no record of a disability that's identified. And the only two examples that might reference a medical condition that the plaintiff might have had came from December 2018, when a section chief during an interview commented that she needed to drink water because she's disabled, and then one in suffered related to an accident. And neither comment seemed connected to her job duties or job descriptions to reasonably infer that her termination two years later was because of a perception of an impairment related to her job duties. For age, she identifies as being over 40. There are no ages that are identified in the complaint, and there's no derogatory comment based on age that's alleged in the complaint either. So while there is, yes, lots of detail, the details that matter for her complaint aren't actually included in among the factual allegations. Well, there are a lot of details that multiple men were making unwanted sexual advances. Do you agree? Yes. Yes, Your Honor. And those occurred specifically between, I'm sorry, I didn't mean to cut you off. Well, there's no, I mean, would you agree those end about when the pandemic began? Around May 16, 2019, I think was the final allegation. It makes sense that at the Air Force, all these men are demanding sex, telling her she'll get a promotion, she'll get benefits if she does. And then her last allegation of that is about when things went, so she, that would explain why there weren't more. Perhaps. It could. Yeah. But that, I guess there's no hostile work environment claim here, right? There's no hostile work environment claim, and there's no harassment claim in this case. So the logic has to be she was fired for being a woman because she refused the sexual acts? Which came two years later. And there's no allegation of a causal connection between those comments and the treatment that she allegedly suffered and her termination that came in February 2000. In the EEO complaints though, are there facts there that suggest that closer in time to the termination, there were repeated new harassments? So the only EEO complaint that's alleged in the complaint is the January 2021 complaint. And I haven't seen new allegations of facts in that EEO complaint regarding any gender-based complaints. It seems that the complaints that I did see were related more to her reviews and her transfer in November 2020, which could, it's more to the adverse action component, but not necessarily the disparate treatment component. As you said, there was one in January of what, 2021? Yes, Your Honor. And within a month she's fired? Yes, Your Honor. So those complaints are highly detailed, right? They list 40 witnesses? Correct. 40 plus? Correct. And one of them's Salas, your supervisor? Correct. That is sort of the questions my colleague was asking. Isn't there a fair inference that whoever fired her talked to Salas? So there's two bases for the retaliation claim. When you look at the causal link between the protected activity and the termination, this court in Wright v. Union Pacific Railroad has suggested that you need to have an inference of employer knowledge plus temporal proximity in order to reasonably infer a retaliation claim based on a protected act. Well, that was true factually in Wright. Yes. But there the action was much more immediate even. It was one business day after the alleged protected activity, yes. And there we had an instance where the supervisor was engaging in coaching sessions with the plaintiff. Skips the mediation. Skips the mediation. A little more. There's a change in behavior among the plaintiffs. That's the case that actually stands for what you needed to stand for. That, oh, okay, the difference between one day and a month, that breaks the causal connection. So I'm not arguing that the one month is too temporally remote. So then you're saying that there has to be some signal that the person who took the action had knowledge and felt guilty, skipped the meeting. Correct. It's that temporal proximity standing alone is insufficient to infer. What's the case that clearly says that at the 12B6 stage? So there isn't a case that exclusively excludes. Or that says closeness in time still requires something else to even get past 12B6. So there are several cases that have held that. Because I'm just going to erupt. This is a bit of criticism. In your brief, the only two cases you cite are two unpublished decisions. Correct. That's not helpful. So what's the case that says what you just said now legally? There has to be closeness of time plus something. So I'm relying mostly on Wright, but then there's also a recent case. Wright doesn't say that. Right. It's based on the facts. Wright said factually there it is. And so much of the argument is based on the cases that they've cited have this similar component where you can infer employer knowledge based on the facts that are actually alleged. So, for example, in Outley v. Lucan Associates, there was an internal complaint to the Air Force that then preceded her dismissal one month later. In Evans v. City of Houston, a demotion came five days after appearing at a public hearing for a co-worker's grievance complaint. Lemaire, the plaintiff, left the job site in order to make a complaint about discrimination. All these instances involve facts where you can infer the employer knowledge. There was also a recent case from this EEO. It's got four different complaints? Yes, Your Honor. It's highly particularized. It mentions all these witnesses, including one of them, her boss. Isn't it even plausible that, therefore, the EEO would have contacted Salas, and within a month she's fired? It's possible, but I don't know that it's plausible based on the facts. Possible or not plausible. Okay. And so I think the standard here is plausible. You have to win on that. Right. Yeah. There was also a recent case from this court, and I know this isn't cited in the brief, Northworthy v. Houston Independent School District. That's 70F4332. It was decided in 2023. It affirmed a motion to dismiss based on no factual allegations regarding knowledge of a grievance. Okay. Slow way down. Okay. Because you only cited unpublished decisions. You haven't said there's a case that says it's got to be close in time plus. But now you're jumping to a case that you're giving us, and it precedes the time that you're filing the briefs. Yes, Your Honor. This is always the type of argument that but it's 70F4 what? 70F4332. 332. Okay. And this case does say proximity, I mean closeness in time plus? It doesn't say closeness in time plus, and unfortunately the analysis of the facts are somewhat limited in that case, but it is a published decision, and it goes into the legal analysis a little bit more in detail. Well, the district court here cited, I don't know if you speak Italian, so it's cicalese. Cicalese. So presumably the district court cited the right standard, got the right standard. I'm just sort of looking at this third amendment complaint and thinking I could infer that all these men that are hitting her, including the supervisor, knew she was complaining about that, and then she gets fired. And I'm wondering, she doesn't even get discovery to find out whether there's a cat's ball problem here? Well, the cat's ball, so the district court didn't actually dismiss based on the lack of the failure to identify the decision maker. It didn't? It did not. So it dismissed based on the temporal proximity issue in that you can't infer an employer's knowledge based on temporal proximity alone. What supporting case law did that, it cite that? So it looks to its prior decision in Alvarado versus Texas Health and Welfare. Its own prior decision. Its own prior decision, yes, which was based in Wright. It's got to be closer in time than a month? So it didn't. You wouldn't agree with that? I wouldn't agree with that. I think one month, if we're looking at temporal proximity after we can infer employer knowledge, one month would be sufficient. And this court's precedent has held that up to two months, or two months might be the upper limit of temporal proximity. I appreciate your candor about that. Yeah. And so this court relied on Alvarado, which itself relied on Wright. And so that's kind of where this analysis is coming from, is that the analysis in Wright. Keep going. I'm asking too much. And it's also important to separate the discrimination and the retaliation issue. If we think about the gender-based discrimination claims that come from May 2019, the retaliation, we're really just looking at this January 2021 complaint. And I think this was argued in the appellee's brief at 27. Smith's termination process began actually in December, which preceded the January protected activity, when she was served with a notice of proposed termination on December 11th, 2020. Who signed that? I'm curious. Who signed them? So I'm going based on the allegations in the complaint. And it was delivered by Salas based on the complaint. Delivered by Salas. On ROA 88. And that's the allegation. It's all over these EEO complaints themselves for making these sexual advances. Yes, Your Honor. I understand that. And the Supreme Court has held in Clark County School District v. Breeden that employers need not suspend previously planned action when there's an intervening protected activity. And so if we think about the gender-based claims and the retaliation claims, we're really looking at the retaliation looks at the January 2021 protected activity example. The gender-based discrimination claims look at the January to May 2019 comments that were made. And there's no causal connection between those comments and the 21 months that span to her termination. Although I understand that you acknowledge the pandemic intervened during that time. It's not alleged. It's not just a curiosity point. That's maybe no legal significance. But you point out May of 2019. I agree with that. And we keep the two apart. Right. And so separate from, you know, the lack of factual allegations regarding these discrimination claims, the district court didn't analyze the McDonnell Douglas framework, although that can be helpful as a framework at the 12B6 pleading standard. I acknowledge that the plaintiff's not required to allege facts to see the prima facie case at the 12B6 stage. But nevertheless, it could be helpful to show causation. And here a plaintiff hasn't identified any comparators. And that's sufficient to affirm dismissal. As this court has done before in cases like Chim v. University of Texas at Austin, where a Cambodian janitor did not allege facts regarding a new hire to suggest that he was less qualified than the plaintiff. And this court affirmed dismissal there. Similarly, in Olivares v. T-Mobile, claims brought by a transgender employee in the Second Amendment complaint, dismissal was affirmed in that case as well for the same reason that there was no comparator that was identified based on the facts in that case. And then finally, in Raj v. Louisiana State University, this court also affirmed dismissal by a male Indian professor because there were no factual allegations regarding any comparators there. So Smith talks about Brisseno-Belmontes v. Coastal Bend College, both in respect to the discrimination claims, but also with respect to the retaliation claims. So Brisseno, I think, is distinguishable for the discrimination conducts because the plaintiff actually did identify two comparators there. And so it denied dismissal because scrutinizing those comparators would be improper at the 12B6 stage. Here, the issue isn't necessarily whether this court improperly scrutinized the comparators because there weren't any that were identified in response to the motion to dismiss briefing or in the complaint itself. Although I recognize that the appellant had claims to have identified comparators in the brief, there's no citation to the record for that, and there are no names that are actually named in the identified Olvera and Ramirez in order to show whether or not they're similarly situated. With respect to the retaliation claim, Brisseno-Belmontes actually met that standard of showing employer knowledge plus the temporal proximity. You had internal complaints to superiors, internal complaints to other individuals within the college system, and so there was a wide array of comments throughout the internal college system that could infer employer knowledge of some kind of internal complaint, plus a one-month between the termination, and that would have been sufficient to infer causation there. Finally, just with respect to some of the comments earlier that were made regarding an additional amended complaint, I think the only comments that were really identified in response to the motion to dismiss were these revised claims under the Rehabilitation Act versus the ADA. There weren't any additional facts that were identified that would be included in an additional complaint that would merit allowing the plaintiff to further amend and file a fourth amended complaint, this time in another bite at the apple, and so for these reasons, I respectfully request that the Court affirm dismissal of the plaintiff's complaint. Thank you, sir. All right, back to you, Mr. Hodges. Mr. Espinosa-Ramon, do you have a question? Just briefly, one, I would like to state that the retaliation claim that we've asserted again, we've asserted the case of Cicely Briceone-Balamantes, which you described, that case specifically, the judge stated that the one-month time frame is enough to create an inference. We've already kind of discussed the plausibility of the decision-maker, Salas, having reasonable inferences of the complaints being filed against him and being involved in that process, leading up to her termination as well, and having that requisite knowledge, and so we assert with regards to the retaliation claims that discovery is needed to ascertain what that requisite knowledge is of the decision-maker, who the decision-makers actually were, and whether they actually were involved in the complaint process, and I think that that can be inferred and can be easily identified through the allegations and the pleadings as it relates to retaliation as to what discovery would be needed to determine the importance. Do you agree with counsel opposite, or I guess, did you allege that even if she was given no reasons, when she was given notice that she's being fired, it came from Salas? Yes, and that's an allegation that it did come from Salas, and I think that's how we played it as well, but, you know, in these situations, there could be other individuals who are out there who could have been. Am I wrong? That would be the tightest connection. Yeah, that would be the tightest connection. Is he listed as a witness or as a harasser in the January 2021 EEO complaint? It's both. He's listed as both. Yes, he was a witness to the previous harassment, but then also he engages in his own harassment in the conduct that she described in December 2020, and so that's what she made the complaint about in January 21 is based on his complaint. What about the argument they've made in their briefs and just reiterated, which is that actually, I guess, she either got notice or somehow the firing predates the January EEO complaint? That allegation has not been filled out. You didn't allege when she got the notice? No, she received notice. What we've alleged is she received notice a month after her protected activity, so she engaged in January 11th and then received notice she was terminated in February 2021. Okay, great. Thank you. Okay, and so the last issue I didn't describe, and I think we kind of fleshed it out as well, our argument was that the district court using Alvarado and using these other cases that are decided on a summary judgment improperly analyzes these cases to a higher standard, a higher pleading standard than is required. You're making the argument that he applied the summary judgment standard, but when you read his ruling and as counsel is arguing, they're saying, you know, there's not the detail who, what, why, when, and where, and you have the time gap in there, so putting aside the summary judgment argument, what's your response to that? I mean, they're arguing, okay, yes, there's a lot here, but the pertinent who, what, why, when, and where, and the time gap is the argument that that's sort of fatal to where you are, so what's your response? And is that regards to discrimination claims? Yeah, yeah. Yeah, so our response to that as to the who, what, where, and the analysis, so, I mean, the court, district court wasn't correct to be able to take the elements of the claim from the summary judgment standard, but however, what we've, what they, the district court erred in is taking the analysis of already having a full discovery record and saying that this applies to a 12B6 motion, and so the standing, the plausible standing is to show the reasonable inferences that these calls of action exist, and so in regards to the discrimination piece, the gender discrimination, she's identified that she was in a protected class, she's identified her qualifications, she's identified that she had an adverse action, and she's also identified individuals who were outside her protected class who were males, and so with that, specifically regards to gender, you know, we, we've. The comparators are the harassers? Yes, and. A little odd. So you're saying, you're saying you allege that they were then harassed themselves, but not fired? No, we're alleging, so the, the appellant was terminated for some type of conduct or some type of reason, and you know, that hasn't been fully fleshed out in, in, in this case as to what reason that they have as the legitimate business reason. However, what we're, what can be inferred is that she was terminated for maybe a violation of a policy or maybe a violation of, of work, of their code of conduct or some, some situation, and so in this situation, opposite of that is these, these individuals, these coworkers were engaged in what we would say would be the same violations of policy or code, code of conduct, but then in themselves were not disciplined or not terminated, and so, so without having to ascertain what, how or why she was terminated, the comparison would be that she was terminated for wrongful conduct in which other individuals were engaged in wrongful conduct were not terminated. In her termination, does it say why? It doesn't say why, and she, she doesn't have a reason. It's, it's kind of clear, and I think that that's. Was she given a sheet of paper of some or just orally terminated or? That. Nothing in the. Yeah, and I think, I think from what we have, it may have just been, you're, you're, you're terminated and effective today without any reasoning as to why. And how long had she worked there? She had worked there for almost about, almost three years. I think we'll say two and a half years up to that point. And so, finally, I just would like to say that we ask that the appellee's motion, excuse me, the district court erred in granting the motion to dismiss, and we ask that this court reverse the district court's decision and remand with instructions to vacate the order and allow discovery to proceed on, on the claims. Thank you. Free time. Thank you, Mr. Hargis. Thank you, counsel. This concludes the cases we have this morning for oral argument. They, along with the non-oral argument cases will be submitted. Having said that, the panel will stand in recess until 9 a.m. in the morning.